**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **TIG INSURANCE COMPANY SUCCESSOR BY MERGER TO AMERICAN SAFETY INDEMNITY COMPANY,** <br><br> ***Plaintiff,*** <br><br> **v.** <br><br> **WOODSBORO FARMERS COOPERATIVE; E.F. ERWIN, INC.,** <br><br> ***Defendants*.** | § § § § § § § § § § § § § | **CIVIL ACTION NO. __________** |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

TIG Insurance Company successor by merger to American Safety Indemnity Company ("TIG") names as defendants Woodsboro Farmers Cooperative ("Woodsboro"); and E.F. Erwin, Inc. ("Erwin"), and submits this Complaint for Declaratory Judgment pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 and shows:

**PARTIES**

1. TIG is a corporation organized and existing under the laws of the State of California with its principal place of business in the State of New Hampshire.

2. Defendant, Erwin, is a Texas company with its principal place of business in El Campo, Texas.

3. Defendant, Woodsboro, is a Texas company with its principal place of business in Woodsboro, Texas. Woodsboro is joined as a defendant herein as it is a necessary party and may soon become a judgment creditor and/or receive a turnover order.

.

## JURISDICTION AND VENUE

4. The court has jurisdiction pursuant to 28 U.S.C. 1332(a)(1) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. 1391(b)(1)-(2), in that it is the judicial district in which defendants reside and all defendants are Texas entities; and a substantial part of the events or omissions giving rise to the claim occurred and/or a substantial part of the property that is the subject of the action is situated in this district.

## FACTUAL BACKGROUND

6. This declaratory judgment action arises from the alleged defective construction of two grain silos at Woodsboro's grain handling facility in Woodsboro, Texas ("the silos"). The First Amended Complaint in the lawsuit styled Cause No. 2014-08-11900; *Woodsboro Farmers Cooperative v. E.F. Erwin, Inc, et al.*; 135th Judicial District, Refugio County, Texas, alleged that Woodsboro and Erwin entered into a contract on March 1, 2013 for construction of the silos.[1] The Complaint alleged that while Erwin completed construction of the silos on November 1, 2013, the work was defective and not in accordance with the terms of the contract.[2] The Complaint further alleged that Erwin failed to remedy the errors and defects in the silo erection work.[3]

7. On September 27, 2016, TIG issued a letter denying coverage to Erwin. Erwin was subsequently defended in the action by Landmark American Insurance Company as an additional insured under the Landmark policy issued to subcontractor A.J. Constructors, Inc.

---

[1] ***Exhibit A***: Woodsboro's First Amended Petition..
[2] Ex. A, ¶6.
[3] Ex. A, ¶6.

("AJC").

8. Erwin and underlying case defendant AJC entered into a subcontract agreement on March 2, 2013 in which AJC agreed to construct the silos that were the subject of the Erwin and Woodsboro contract.

9. On or around November 25, 2013, Woodsboro and Erwin entered into an "Addendum to Contract to Construct Grain Storage Facility" ("the Addendum"), which was an addendum to the Contract.[4] According the Addendum, while the silo erection work that was the subject of the Contract (and the Subcontract) was substantially complete, Woodsboro had advised Erwin that the silos were defective in that water from rains falling upon the silos was making its way inside the silos.[5] The Addendum further stated that Erwin acknowledged water penetration into the silos and that the silos were not free from defects as required by the Contract.[6] In consideration of Woodsboro's payment to Erwin of the final payment owed to Erwin under the Contract, the Addendum set forth a list of specific defects with the silos that Erwin was obligated to remedy. Specifically, the Addendum identified the following alleged defects with the silos:

**South Tank**

a. Repair the 5 vents on top of tank to stop water from leaking to inside of tank.
b. Repair all leaks and seepages of water to inside of tank.
c. Repair leaks of water from 2 holes in the center of tank.
d. Add support to fans on top of tank.
e. Repair loose bolts on panels outside of tank.
f. Install ladder at top of tank to access catwalk.
g. Bolt down ladder on leg.
h. Properly reinstall tank doors.
i. Replace rivets with screws on the roof.

**North Tank**

a. Install 9 bolts on stiffener

[4] ***Exhibit B***: The Addendum.
[5] Ex. B.
[6] Ex. B.

b. Repair 3 bolts in the cement.
c. Repair water leaks found on roof.
d. Repair all leaks and seepages of water to inside of tank.
e. Repair loose bolts on panels outside of tank.
f. Repair panels in the tank to prevent leaking.
g. Properly reinstall tank doors.
h. Repair cracked cement on dump pit.
i. Add support to fans on top of tank.
j. Repair 2 holes in center of tank.[7]

10. The *Woodsboro* Suit proceeded to arbitration on August 21, 2018 and testimony concluded on August 23, 2018. On October 10, 2018, the Construction Industry Arbitration Tribunal of the American Arbitration Association entered its final award in the *Woodsboro* Suit.[8] The Arbitration panel awarded the following damages against Erwin in favor of Woodsboro:

| | |
|---|---|
| *Deconstruction and reconstruction of grain bins* | *$805,642.74* |
| *Electrical costs associated with grain bin reconstruction* | *$15,221.51* |
| *Loss profit for late delivery of project* | *$167,209.00*[9] |

11. The Arbitration panel also found that Woodsboro was the prevailing party in the *Woodsboro* Suit and therefore was entitled to recover its reasonable and necessary attorneys' fees in the amount of $150,000.00 from Erwin.[10] Erwin was also ordered to pay $153,895.79 in prejudgment interest and $8,272.35, which represented Woodsboro's court costs and arbitration costs.[11] The Arbitration panel found that the grain silos erected as part of the Contract and the Subcontract were defectively constructed and could not be placed into service either as constructed or as repaired by Erwin.[12] It further found that the erection work performed by AJC was negligently performed and did not comply with the terms of the Subcontract.[13] The Arbitration panel held that the costs incurred by Woodsboro through its retention of Pitcock

[7] Ex. B.
[8] ***Exhibit C***: Arbitration award.
[9] Ex. C.
[10] Ex. C.
[11] Ex. C.
[12] Ex. C.
[13] Ex. C.

Supply, Inc. ($805,642.74) and Service Junction, Inc. ($15,221.51) were recoverable against Erwin and AJC, which costs represented deconstruction, repair and proper reconstruction of the grain silos.[14]

12. The Arbitration panel denied Woodsboro's claimed damages associated with foundation work, as well as costs associated with the construction of certain concrete ramps.[15] The Arbitration panel also found that there was an implied reasonable time for performance of the silo erection work in the Contract and that the time was exceeded by Erwin.[16] The Arbitration panel found that the silos were not completed by Erwin within a reasonable time and that Woodsboro was damaged by not being able to place the grain bins in service for the 2013 harvest season.[17] Based on this finding, the Arbitration panel awarded damages against Erwin in favor of Woodsboro in the amount of $167,209.00, which represented $158,758.00 in lost profits for grain sales and $8,451.00 in excess freight charges for premature sales.[18] In total, the Arbitration panel awarded recovery against Erwin in favor of Woodsboro in the amount of $1,300,241.39.[19] The Arbitration panel awarded the following damages against AJC in favor of Erwin:

| | |
|---|---|
| *Deconstruction and reconstruction of grain bins* | *$805,642.74* |
| *Electrical costs associated with grain bin reconstruction* | *$15,221.51*[20] |

13. The Arbitration panel also awarded Erwin 83% of the amount the Arbitration panel awarded against Erwin in favor of Woodsboro for Woodsboro's attorney's fees and prejudgment interest.[21] Specifically, the Arbitration panel awarded Erwin 124,500.00 in attorney's fees owed by Erwin to Woodsboro and $127,733.50 in prejudgment interest owed by

[14] Ex. C.
[15] Ex. C.
[16] Ex. C.
[17] Ex. C.
[18] Ex. C.
[19] Ex. C.
[20] Ex. C.
[21] Ex. C.

ERWIN to Woodsboro.[22] In total, the Arbitration panel awarded recovery against AJC in favor of Erwin in the amount of $1,079,963.81.[23]

14. There is no coverage for the damages awarded against Erwin in the *Woodsboro* Suit based on the terms of the TIG (American Safety Indemnity Company) policy and applicable law.

**POLICY AND REQUEST FOR DECLARATORY RELIEF**

15. American Safety Indemnity Company[24] issued Commercial General Liability policy number ESL1002066-1301 to E.F. Erwin, Inc., effective 2/27/13 – 2/27/14.[25] The policy covers: "those sums that the insured becomes legally obligated to pay as damages because of … 'property damage'" … "'caused by an 'occurrence'" … "during the policy period…" "'Property damage' means a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of us shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

16. There is no coverage under the plain language of the policy for economic loss or loss of earnings as these do not constitute property damage caused by an occurrence.

17. Failure to follow plans or specifications does not constitute an occurrence, defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

18. There is no coverage under the plain language of the policy for damage to property caused by faulty work performed by the insured. Exclusions j. (5) and (6) exclude "'Property

[22] Ex. C.
[23] Ex. C.
[24] TIG Insurance Company was successor by merger to American Safety Indemnity Company.
[25] ***Exhibit D***: ASIC policy number ESL1002066-1301.

damage' to: (5) That particular part of real property on which you or any contractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or (6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." "'Your work' means: (1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."

19. The policy also excludes "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (exclusion l.). The “products-completed operation hazard” is defined in part as “'property damage' … arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned…"

To the extent the faulty work was the insureds, there is no coverage for such damages under this exclusion.

20. The policy also excludes "'property damage' to 'your product' arising out of it or any part of it (exclusion k.)." "Your product" is defined in part as "any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by you…" To the extent the product was the insureds, there is no coverage for such damages to such product.

21. There is no coverage under the plain language of the policy for damage to impaired property or property not physically injured (exclusion m.). The TIG policy also excludes coverage for "'Property damage' to 'impaired property' or property that has not been physically injured, arising out of: A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or A delay or failure by you or anyone acting on your behalf to perform a contract or

agreement in accordance with its terms."

22. There is no coverage for contractual liability under the plain language of the policy which excludes "property damage" for which the insured is obliged to pay damages by reason of the assumption of liability in a contract or agreement (exclusion b.) This exclusion does not apply to liability for damages: That the insured would have in the absence of the contract or agreement; or assumed in a contract or agreement that is an 'insured contract'…". "Insured Contract" means … that part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for … "property damage" to a third person or organization..."

23. There is no coverage for professional liability under the plain language of the policy. The policy excludes "'property damage' … arising out of the rendering o or failure to render any 'professional services' by or for the insured." "'Professional services' means: The preparing, approving, recommending or failing to repair, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements; Supervisory, inspection, training or engineering services…"

24. TIG seeks a declaration that it owes no duty to defend or indemnify defendant Erwin for the claims at issue in the underlying lawsuit and/or arbitration award and that it owes no duty to pay any final judgment or turnover relief awarded to Woodsboro, as TIG's insured has no coverage under the policy pursuant to the policy provisions cited above.

## CONCLUSION

TIG respectfully requests a judgment from this Court that (1) TIG does not owe a duty to pay any defense costs incurred by defendant Erwin in the underlying lawsuit; (2) TIG does not

owe a duty to indemnify defendant Erwin for any claims or causes of action asserted in the underlying lawsuit; (3) TIG owes no duty to pay any final judgment or turnover relief award to Woodsboro as TIG's insured has no coverage under the policy. TIG further asks for such other relief to which it may be entitled in law or in equity.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/Chris Gabriel*
Chris Gabriel
Attorney-In-Charge
Texas Bar No. 24074237
S.D. Tex. No. 1654572
115 Grand Avenue, Ste. 222
Southlake, Texas 76092
Ph: (817) 488-3134
Fax: (817) 488-3214

**ATTORNEY FOR PLAINTIFF TIG INSURANCE COMPANY SUCCESSOR BY MERGER TO AMERICAN SAFETY INDEMNITY COMPANY**